UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MITCHELL, LEWIS & STAVER, CO., et al.,

    Plaintiffs,

v.

VALLEY FARMS SUPPLY, LLC, et al.,

    Defendants.
_____/

Case No. 1:21-cv-555

Hon. Hala Y. Jarbou

## OPINION

Plaintiffs Kurt Keiffer and Mitchell, Lewis & Staver, Co. ("MLS") filed this suit against Defendants Valley Farms Supply, LLC ("VFS"), Shad Teegardin, and Glenn Jandernoa alleging violations of the Stored Communications Act and five state law claims. Now pending before the Court are the parties' cross-motions for summary judgment. (ECF Nos. 92 and 95.) For the reasons discussed herein, the motions will be granted in part and denied in part.

### I. BACKGROUND

This case involves two businesses and an employee who switched from one company to the other. The first company, VFS, is a wholesale distributor business in the water well and wastewater industry with customers in Michigan, Indiana, and Ohio. Glenn Jandernoa is the President of VFS, and Shad Teegardin is one of its salespeople. The second company, MLS, is one of VFS's competitors. MLS began expanding its business in Michigan around 2019.

Keiffer began working for VFS as a salesperson in 2013. As part of his employment, VFS provided Keiffer with a company-issued vehicle, company-issued laptop computer, and company-

issued cellphone. Keiffer regularly worked from home during his tenure at VFS. And although Keiffer had a VFS business email account, he regularly used his personal Gmail account for business purposes and accessed this personal account on his company-issued devices. (Keiffer Dep. 22-23, ECF No. 94-2.) Keiffer included a confidentiality notice on his Gmail correspondence clarifying that he used this account for business purposes. (Forwarded Exchange of VFS Emails, ECF No. 99-6, PageID.3590.)

In June 2019, Keiffer began discussing employment opportunities with MLS, using his personal Gmail account to do so. On June 11, 2019, MLS emailed Keiffer a formal job offer. (*Id.*, PageID.3580-3584.) In separate correspondence during the hiring process, Keiffer also sent an email to Jim Schlabach, the Director of Branch Operations at MLS, stating: "I'VE BEEN FORWARDING A CRAP LOAD OF EMAILS TO THIS ACCOUNT FROM MY CURRENT ONE." (Forwarded Exchange of VFS Emails, ECF No. 99-3, PageID.3461.)

On June 26, 2019, Keiffer officially resigned from VFS to go work for MLS. The record indicates his resignation was deemed effective on or around the next day. (Jandernoa Dep. 53, ECF No. 94-3; Forwarded Exchange of VFS Emails, ECF No. 99-5, PageID.3536.)

After his resignation, Keiffer attempted to factory reset his VFS-issued devices before returning them. (Forwarded Exchange of VFS Emails, PageID.3578.) The factory reset was apparently unsuccessful, and Keiffer's personal Gmail account and password remained on the devices. On June 27, 2019, Teegardin and another VFS employee traveled to Keiffer's home to pick up the company-issued devices. At 5:30 PM, Keiffer used his Gmail account to send the following message to Schlabach, signifying his time at VFS was done and he could begin his employment with MLS:

> PERFECT. TRUCK AND ALL MY GOODIES ARE GONE. GENERAL MANAGER AND TOP SALESMAN PICKED IT UP. NICE CHAT OVER A

> BEER. THAT'S HOW I WANTED IT TO HAPPEN. NOW OFF THE RECORD. GAME ON!!! HAHA.

(Forwarded Exchange of Non-VFS Emails, PageID.3536.) At this point, Keiffer no longer had access to the VFS devices.

Days later, on June 30, 2019, emails from Keiffer's personal Gmail account were forwarded to Teegardin's VFS account. (*Id.*) While some of the forwarded emails were originally timestamped during the period in which Keiffer was still employed at VFS, other forwarded emails were timestamped after Keiffer had resigned and returned his VFS devices. (*Id.*) Minutes after these emails were forwarded to Teegardin's VFS account, Teegardin then forwarded them to Jandernoa's VFS account. (*Id.*) Circumstantial evidence indicates that Teegardin accessed Keiffer's personal Gmail account and forwarded emails to himself to circulate to other VFS employees (it would make little sense for Keiffer to forward these emails to his former employer). Some of the emails Teegardin accessed on Keiffer's Gmail account could not have been sent from VFS devices because they were sent after Keiffer had resigned and returned his VFS devices. The Court will refer to these communications as emails sent from a non-VFS device.

The next day, July 1, 2019, VFS employees accessed Keiffer's Gmail account again. Teegardin forwarded himself an email chain (sent after Keiffer had already returned his VFS devices) in which Keiffer was communicating with his new employer's human resources department from a non-VFS device. (Forwarded Exchange of Internal MLS Emails, ECF No. 99-4, PageID.3487.) Another email chain on Keiffer's Gmail account—internal to MLS employees and sent after Keiffer had already forfeited his VFS devices—was forwarded directly to both Teegardin and Jandernoa. (Forwarded Exchange of Internal MLS Emails, ECF No. 99-6, PageID.3619.) Shortly after, Jandernoa forwarded this email chain—which showed Keiffer's new

3

client list as an MLS employee—to another VFS executive,[1] adding the message: "Bingo." (*Id.*) As noted above, circumstantial evidence indicates that Teegardin accessed Keiffer's personal Gmail account and forwarded himself emails that were sent on a non-VFS device. However, it is unclear whether Jandernoa ever accessed Keiffer's account; he may have merely forwarded emails that Teegardin sent him from Keiffer's account.

Relying on these emails, which indicate Keiffer brought proprietary information with him as he transitioned between companies, VFS filed a lawsuit in state court on July 15, 2019 against MLS and Keiffer alleging the misappropriation of trade secrets. The case was dismissed pursuant to a stipulated dismissal order on March 22, 2021.

Approximately three months after the dismissal of the state court action, MLS and Keiffer filed this lawsuit against VFS, Teegardin, and Jandernoa for improperly accessing MLS internal communications through Keiffer's personal Gmail account. Plaintiffs assert six claims: Violations of the Stored Communication Act (Count I); Intrusion Upon Seclusion (Count II); Trespass to Chattels (Count III); Common Law Conversion (Count IV); Statutory Conversion (Count V); and Civil Conspiracy (Count VI). (Second Am. Compl., ECF No. 71.)[2]

Plaintiffs now move for summary judgment on all elements of Counts I-VI except for damages. (ECF No. 92.) Defendants move for summary judgment on Count I and ask the Court decline to exercise supplemental jurisdiction over Counts II-VI. (ECF No. 95.)

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[1] The executive was the President of Headwater Co., one of VFS's parent companies.

[2] On October 1, 2024, this case was assigned to the undersigned pursuant to Administrative Order No. 24-CA-079 (ECF No. 92).

4

P. 56(a).  The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of material facts.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)).

Summary judgment is not an opportunity for the Court to resolve factual disputes. *Anderson*, 477 U.S. at 249.  The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor."  *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

### III. ANALYSIS

#### A. The Stored Communications Act

The Stored Communications Act ("SCA") provides that whoever "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains . . . access to a wire or electronic communication while it is in electronic storage in such system shall be punished."  18 U.S.C. § 2701(a).  Electronic storage is defined by the SCA as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication."[3]  *Id.* § 2510(17).  The SCA provides a private cause of action to "any . . . person aggrieved by any

---

[3] Emails—whether read or unread—that are stored in a web-based email service are covered under the statute.  *Hately v. Watts*, 917 F.3d 770, 791-98 (4th Cir. 2019).

violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind." *Id.* § 2707(a).

For Plaintiffs' SCA claim to succeed, the following must be true: (1) Defendants must have accessed Keiffer's personal Gmail account; (2) Defendants must have accessed Keiffer's account either without authorization or in a manner that exceeded their authorization; and (3) Defendants' unauthorized access must have been intentional.

### 1. Access

The Court starts with whether VFS employees accessed Keiffer's personal Gmail account. As discussed above, circumstantial evidence indicates that Teegardin accessed Keiffer's personal Gmail account. Teegardin forwarded Keiffer's emails to himself so he could circulate them to other VFS employees. The Court must determine whether a holding regarding access is appropriate at the summary judgment stage.

As a preliminary matter, the Court must address the implications of the Fifth Amendment in this case. During discovery, Defendants invoked the Fifth Amendment 171 times in response to Plaintiffs' requests for admission, interrogatories, and deposition questions. (Pls.' Reply 1, ECF No. 100.) Typically, Defendants invoked the Fifth Amendment when asked about accessing Keiffer's Gmail account.

The parties argue over whether the Court can make an adverse inference due to Defendants' invocation of the Fifth Amendment. "[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify *in response to probative evidence offered against them* . . . ." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (emphasis added) (internal citation omitted). "[L]ower courts interpreting *Baxter* have been uniform in suggesting that the key to the *Baxter* holding is that such adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer." *Lawrence v. Madison Cnty.*, 176

6

F. Supp. 3d 650, 663 (E.D. Ky. 2016) (collecting cases).  Therefore, where there is no probative evidence against a defendant, the Court cannot draw any adverse inferences.

As discussed above, when asked about sending emails from Keiffer's account to himself, Teegardin invoked the Fifth Amendment.  (Teegardin Dep. 48-49, ECF No. 92-4.)  Because he invoked the Fifth Amendment even though there exists probative evidence indicating he directly accessed Keiffer's personal account (the circumstantial evidence outlined above), the Court can make an adverse inference against Teegardin, finding that he accessed Keiffer's personal email account in some capacity.

However, even if the Court could not make such an inference, summary judgment regarding Teegardin's access to Keiffer's personal Gmail account is appropriate.  Plaintiffs presented evidence from which a reasonable jury could find that Teegardin accessed Keiffer's emails.  Defendants presented no contrary evidence.  There is no question of material fact for a jury to resolve on this issue.

Jandernoa, on the other hand, is different.  As indicated above, the record includes evidence suggesting that Jandernoa *may* have accessed Keiffer's Gmail account directly (some emails were sent directly from Keiffer's account to both Teegardin and Jandernoa), but there is also evidence suggesting that Jandernoa relied on Teegardin's access to Keiffer's Gmail account.  The evidence could lead a reasonable juror to either conclusion.  Because Jandernoa was not confronted with evidence showing he directly accessed Keiffer's Gmail account, the Court cannot make an adverse inference from his invocation of the Fifth Amendment.  As a result, this question of fact is best left for the jury to decide.

In short, the Court finds that Teegardin accessed emails on Keiffer's personal account.  He forwarded emails from Keiffer's account to himself.  Because Teegardin was acting within the

7

scope of his employment and in furtherance of his employer's interests (applying company policy to protect company information), the finding applies to VFS as well. However, the Court cannot make such a finding with regard to Jandernoa.

### 2. Authorization

The Court must next determine whether Teegardin accessed Keiffer's Gmail account either without authorization or in a manner that exceeded authorization. The Court will first determine whether Teegardin was authorized to access Keiffer's Gmail account in any capacity. If he had such authorization, the Court will determine whether he exceeded such authorization.

Companies may permit employees to access another employee's personal email account to view messages that were sent with company property. *Lazette v. Kulmatycki*, 949 F. Supp. 2d 748, 754 (N.D. Ohio 2013). When a company's policy provides such authority, courts limit the authorization to emails that were sent during employment. *Id.* at 754 & n.8 (explaining that when a company can access an employee's personal account, any authority to do so is not indefinite, and such authority ends when the employee no longer works for the company). A company cannot spy on a former employee's communications that were sent from a non-company device. *Id.* Further, failing to log out of an account on a company device does not provide an employer with authorization to access additional parts of an account's contents. *Id.* at 756-57. Plaintiffs have the burden to prove that Defendants acted either without—or in a manner that exceeded—authorization. *Abu v. Dickson,* No. 20-10747, 2023 WL 3668515, at *6 (E.D. Mich. May 25, 2023), *aff'd,* 107 F.4th 508 (6th Cir. 2024).

Defendants argue that they were authorized to access Keiffer's Gmail account based on three company policies. First, the VFS Handbook provides that "office and computer files, as well as electronic mail and transmissions, may be monitored and/or accessed by Company as it deems necessary." (VFS Employee Handbook, ECF No. 97-10, PageID.3006-3007.) The policy explains

8

that VFS "will monitor all access to and use of the Systems." (*Id.*, PageID.3009.) The monitoring would include "accessing, intercepting, reviewing, copying, and deleting any communications, images, or messages sent, received, or stored on the Systems," and "personal messages . . . [would] be treated no differently." (*Id.*, PageID.3009-3010.) The policy also states: "Users cannot use the Systems to send, receive, or store any messages that they wish to keep private" and that "THERE IS NO EXPECTATION OF PRIVACY REGARDING ANY INFORMATION ON THE SYSTEMS." (*Id.*, PageID.3010.)

Second, Defendants point to Headwater Companies' policies, applicable as a parent company to VFS. The Headwater Companies Employee Handbook provides: "Employees should not have any expectation of privacy in their use of a company computer, phone, or other communication tools. All communications made using company-provided equipment or services including email and internet activity, are subject to inspection by the company." (Headwaters Employee Handbook, ECF No. 97-10, PageID.3037.)

Finally, Defendants point to Franklin Electric Co.'s policies, applicable as another parent company to VFS. The Franklin Electric Co., Inc. Information Technology Usage Policy provides that "personnel shall have no expectation of personal privacy in any material stored, created, received, or sent using any of the Company's Tools," and that "[a]ll communications and information created by, transmitted by, received from, or stored using these Tools, including e-mail, are Company records and the property of the Company." (Franklin Policy 2, ECF No. 96-1.) The Franklin IT Policy also states that "[t]he Company has systems in place that can monitor and record Tools usage. (*Id.*) "Users of the Tools shall understand that the Company's systems are capable of recording all information transmitted into and out of the Company's network, including each . . . electronic message, and each file transfer." (*Id.*) The employer could "exercise its

authority to monitor, intercept, access, retrieve, disclose and delete any material stored, created, transmitted, received, or sent using these Tools, including e-mail, for any reason and without further notice to Personnel." (*Id.*)

Plaintiffs make several arguments regarding the legitimacy of these three policies. For example, Plaintiffs claim that Keiffer never worked for VFS *Inc.*, Headwater Companies, or Franklin Electric. They further argue that Keiffer never signed two of the policies and the one policy he did sign is not the same policy Defendants produced.

Plaintiffs' arguments are unpersuasive. VFS Inc. was converted to VFS LLC in 2018. The conversion has no legal significance. *See* Mich. Comp. Laws § 450.4709(3)(f) ("The surviving domestic limited liability company is considered to be the same entity that existed before the conversion and is considered to be organized on the date that the business organization was originally organized."). Moreover, the Franklin Electric policy states that it applies to all of its subsidiaries, such as VFS. And Plaintiffs cite no case law requiring the policies to be signed in this context. Perhaps most importantly are a series of emails exchanged regarding the policies in June 2019. Keiffer wrote in a June 11, 2019 email to MLS that he signed a "Handbook with Headwaters Title." (VFS Email Exchange, ECF No. 96-2, PageID.2696.) Additionally, upon request, VFS emailed Keiffer both the VFS Handbook and the Headwater Companies Handbook. (Email to Keiffer, ECF No. 96-1, PageID.2605.) Finally, according to Jandernoa's declaration, Keiffer received both the Franklin Electric and Headwater policies, and Jandernoa told all VFS employees that the policies applied. (Jandernoa Decl., ECF No. 96-1, PageID.2549.) Plaintiffs have presented no evidence to the contrary. The fact that Keiffer remembers signing some policies but does not recall when is insufficient to create a question of fact.

The language of the three policies is clear that Defendants were authorized to monitor the messages sent from Keiffer's Gmail account using company-issued devices. Plaintiffs argue that the policies do not authorize Defendants to access Keiffer's Gmail account after he was no longer employed by VFS. The Court agrees in part. Per the company policies, Defendants could access Keiffer's Gmail account to monitor messages that were sent using company-issued devices. And Defendants could continue to access messages that were sent using company-issued devices even after Keiffer resigned. However, after Keiffer returned the company-issued devices, Defendants were not allowed to access new emails that were sent from non-VFS devices. The company policies did not grant Defendants indefinite authorization to monitor Keiffer's post-employment personal communications. Yet, as discussed above, Teegardin accessed emails that Keiffer sent after he had already resigned and returned his VFS devices. Therefore, Teegardin must have accessed emails that Keiffer sent—post-employment—from some non-VFS device, exceeding the authority granted by company policies (which was limited to messages sent on VFS devices). Other VFS employees, like Jandernoa, may have also exceeded these authorizations if they accessed the post-resignation, non-VFS device emails. However, their involvement cannot be determined at the summary judgment stage.

### 3. Mens Rea

To violate the SCA, Defendants must have "*intentionally* exceed[ed] an authorization." 18 U.S.C. § 2701(a)(2) (emphasis added). Defendants must have had "a highly culpable state of mind" and "knowledge that [their] conduct was unlawful." *Abu*, 2023 WL 3668515, at *9 (internal citations omitted).

Defendants first argue that Plaintiffs conceded arguments related to the intent element due to insufficient briefing. In this Court's view, Plaintiffs addressed the intent requirement in their briefs. However, there remains material questions of fact related to this element.

11

Defendants contend that anyone who accessed Keiffer's emails would have thought such access was authorized by company policies, and therefore any violation of the SCA would be unintentional. According to Jandernoa's declaration, he believed (and told others to believe) that company policies authorized VFS employees to search company-issued devices. (Jandernoa Decl., PageID.2549-2550.) As stated above, Defendants exceeded any authorization when they accessed Keiffer's post-resignation messages sent from non-VFS devices. However, it remains unclear whether VFS employees had the requisite intent as they did so. Accordingly, the Court finds that a question of material fact exists with respect to the intent element.

### 4. Standing/Damages

The SCA provides a private cause of action to "any provider of electronic communication service, subscriber, or other person aggrieved by any violation." 18 U.S.C. § 2707(a). With respect to damages, "[t]he [C]ourt may assess . . . the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000." *Id.* § 2707(c). The Court may also assess costs and attorney fees as well as punitive damages if the violation is willful or intentional. *Id.*

Defendants argue that Plaintiffs lack Article III standing because they have not suffered a concrete injury that is redressable by this Court.[4] Defendants specifically contend that (1) Plaintiffs cannot prove actual damages as a result of Defendants' violations of the SCA; (2) statutory damages are unavailable to victims absent actual damages; and (3) an award of punitive damages

---

[4] For standing, a plaintiff's injury must also be particularized; there is no question that the direct invasion of Plaintiffs' electronic communications is particularized. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (explaining that harm to the plaintiff constitutes a particularized injury).

and/or attorney's fees, while permissible in the absence of actual or statutory damages, is unwarranted as a matter of law.

Keiffer has Article III standing. Even if Keiffer cannot prove any actual damages, he seeks to "vindicate a statutorily created private right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 348 (2016) (Thomas, J., concurring) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982)). A violation of a statutorily created private right satisfies the concrete injury prong of standing. *Havens Realty Corp.*, 455 U.S. at 373 (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing . . . .") (cleaned up)); *see also Seale v. Peacock*, 32 F.4th 1011, 1028 (10th Cir. 2022) (clarifying that courts can award punitive damages for SCA violations even when the plaintiff cannot show actual damages).

Similarly, because MLS is a "person" under the statute, MLS also has standing to sue. 18 U.S.C. §§ 2711(1), 2510(6). VFS employees accessed MLS electronic communications without proper authorization. MLS now seeks to vindicate its rights via the SCA as an "other person aggrieved." 18 U.S.C. § 2707(a). It has standing to do so.

### 5. Conclusion

In sum, the Court holds that Teegardin exceeded his authorization by accessing emails that Keiffer sent and received from non-VFS devices, and VFS is vicariously liable for Teegardin's conduct. The Court further holds that both Keiffer and MLS have standing. The case will proceed to trial on the SCA claim to determine (1) whether Teegardin accessed Keiffer's non-VFS device emails (and, therefore, also exceeded authority); (2) whether any Defendants had the requisite intent to violate the SCA; and (3) damages, if applicable.

**B. State Law Claims**

Plaintiffs assert state law claims of Intrusion Upon Seclusion, Trespass to Chattels, Common Law Conversion, Statutory Conversion, and Civil Conspiracy. Federal courts may exercise supplemental jurisdiction "over all other claims that are so related to claims . . . within . . . original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). Claims are considered part of the same case or controversy when they "derive from a common nucleus of operative fact such that the relationship between the federal claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional use." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (internal quotation omitted). Courts may decline to exercise supplemental jurisdiction when:

> (1) The claim raises a novel or complex issue of State law,
>
> (2) The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) The district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Courts have "broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1990) (internal quotation omitted).

The Court finds that an exercise of supplemental jurisdiction is not appropriate here. While the state law claims may derive from some common facts, they involve a broader scope of legal issues, elements, and facts than the SCA claim. Under these circumstances, exercising supplemental jurisdiction does not "serve[] the principles of economy, convenience, fairness, and

comity which underlie the pendent jurisdiction doctrine." *City of Chicago*, 522 U.S. at 172 (internal quotation omitted).

## IV. CONCLUSION

The Court will grant Plaintiffs' motion for summary judgment in part, holding that Teegardin exceeded his authorization to access Keiffer's Gmail account and VFS is vicariously liable for such conduct. However, as to whether Jandernoa also exceeded his authorization, whether Defendants had the requisite intent to violate the SCA, and whether damages are appropriate remain questions of material fact best suited for a jury. The Court will grant Defendants' motion in part, deciding not to exercise supplemental jurisdiction over Plaintiffs' state law claims.

The Court will enter an order consistent with this Opinion.

Dated: March 5, 2025                             /s/ Hala Y. Jarbou
                                                 HALA Y. JARBOU
                                                 CHIEF UNITED STATES DISTRICT JUDGE